UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.

ARBELLA MUTUAL INSURANCE
COMPANY  as subrogee of ROBERT
SANTANIELLO and SUSAN
SANTANIELLO,

     *Plaintiff*

v.

AMAZON.COM INC. AND ALMA
BUCHANAAN [sic] a/k/a and/or d/b/a,
"PORIA COCOS",

     *Defendants*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Arbella Mutual Insurance Company, as subrogee of Robert Santaniello and

Susan Santianiello, by and through its attorneys, Gargiulo / Rudnick, LLP, states the following

upon information and belief:

## THE PARTIES

1.     At all times material hereto, Plaintiff, Arbella Mutual Insurance Company, ("Arbella") is
an insurance corporation organized under the laws of the Commonwealth of
Massachusetts with a principal place of business at Quincy, County of Norfolk,
Commonwealth of Massachusetts, and is subrogee of its named insured, Robert
Santaniello and Susan Santaniello, (hereinafter "Santaniello"). Arbella, at all times
relevant, was authorized to conduct business including, but not limited to issuing policies
of insurance for fire and allied lines of insurance coverage in the Commonwealth of
Massachusetts.

2.     At all times material hereto, subrogors, Plaintiff's insureds, Robert Santaniello and Susan
Santaniello, ("Santaniello") are residents, as well as owners of record and occupants, of

the residential property that is the subject of this lawsuit, located at 88 Hazelwood Avenue, Longmeadow, County of Hampden, Commonwealth of Massachusetts. At all times relevant, Plaintiff's insureds had a homeowner's insurance policy with Arbella that included coverage for claims for losses due to property damage of the premises located at said address, 88 Hazelwood Avenue, Longmeadow, MA.

3.   At all times material hereto, Defendant, Amazon.com, Inc., ("Amazon") is a Delaware corporation, which sells and/or distributes products through its online marketplace website all over the world. Amazon does business in Massachusetts either through itself or the many wholly-owned subsidiaries and affiliated corporations and entities which it controls.

4.   Amazon, at all relevant times, was engaged in the sale and/or distribution of products through its online marketplace website, including among other things, hoverboards plus accompanying equipment and supplies, including but not limited to Noza Tec Hoverboards which were sold and/or distributed in the Commonwealth of Massachusetts.

5.   On information and belief, at all times material hereto, Defendant, Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos" (hereinafter "Poria Cocos") with an e mail address of almacuch@yahoo.com, and an address of 2700 Las Positas Road, Livermore, State of California, at all relevant times, was engaged in the sale and distribution of hoverboards plus accompanying equipment and supplies, including but not limited to Noza Tec Hoverboards which were sold and distributed in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over the parties pursuant to 28 U.S.C. section 1332 (a)(1) and/or (c)(1)(A) based upon diversity because the parties reside and/or conduct business in Massachusetts. The Plaintiff, Arbella Mutual Insurance Company, is a Massachusetts corporation which conducts business in the Commonwealth of Massachusetts; its insured Robert and Susan Santaniello reside in Massachusetts; the Defendant, Amazon.com Inc., is a Delaware corporation, and Defendant, "Poria Cocos", on information, resides in the state of California and Plaintiff alleges said Defendants have committed unlawful acts, and, have caused and continue to cause injury and damages to the Plaintiff in Massachusetts. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

7.   Venue is proper in this Court pursuant to 28 U.S.C. section 1391(a), (b)(2)(3) and/or (c)(1)(2) in that the events giving rise to the claim occurred in Massachusetts and the Plaintiff, Arbella, as subrogee, maintains its principal place of business in Massachusetts and the Plainitff's subrogor, is a resident of Massachusetts.  Defendants are subject to personal jurisdiction within this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.      At all times relevant to this Complaint, Robert Santaniello and Susan Santaniello, owned and occupied property located at 88 Hazelwood Avenue, Longmeadow, County of Hampden, Commonwealth of Massachusetts (hereinafter "Property").

9.      At all times relevant to this Complaint, Robert Santaniello and Susan Santaniello, were insured by Arbella Mutual Insurance Company for damages related to fire and casualty losses.

10.     As a result, Arbella is now legally subrogated to the recovery of its claim payments and deductible from Defendants, Amazon and Poria Cocos, the sum of which is sufficient to invoke the jurisdiction of this Honorable Court.

11.     This lawsuit is brought by Arbella Mutual Insurance Company, Inc. in the name of its insured as a subrogation action.

12.     At all times relevant hereto, Santaniello was insured by Arbella pursuant to the terms and conditions of policy number 65688400005, which provided insurance coverage for claims for fire-related losses.

13.     As a result of property damage resulting from a fire which was caused by a defective Noza Tec Hoverboard sold to Susan Santaniello on the Amazon.com marketplace website, pursuant to its obligations under the terms of its policy of insurance with its insureds, Arbella Mutual Insurance Company, Inc. has paid $895,534.49 and continues to pay its insureds for fire-related losses arising out of the September 13, 2017 fire on the Property.

**Sale of Noza Tec Hoverboard on Amazon Marketplace Website to Susan Santaniello**

14.     Susan Santaniello had an Amazon account to purchase products on its marketplace website.

15.     On or about November 2015, Mrs. Santaniello purchased two hoverboards for her sons for Christmas on the Amazon marketplace website, including but not limited to the Noza Tec model.

16.     In addition to the purchase of two hoverboards, Noza Tec and Rio Rand models, Mrs. Santaniello also purchased an Extended Protection Plan for each hoverboard, including the Noza Tec Hoverboard.

17.     Amazon, by and through its employees, agents, servants and/or representatives, assembled, installed, tested, inspected, sold and/or distributed the Noza Tec Hoverboard to Susan Santaniello in Massachusetts.

18.     The Nova Tec Hoverboard was operated consistent with the manufacturer's expected use of the product.

**The Noza Tec Hoverboard Sold on Amazon's Marketplace Website to Susan Santaniello Caused a Fire Resulting in Significant Property Damage to the Santaniello Home**

19.     On or about September 13, 2017, during a reasonable and foreseeable operation of the Noza Tec Hoverboard, said product malfunctioned igniting a fire that significantly damaged the Santaniello family's dwelling and personal property located in and on the Property.

20.     The Noza Tec Hoverboard assembled, installed, tested, inspected, sold and/or distributed by the Defendants, Amazon and Poria Cocos, was defective and caused the fire which occurred at the Property as a direct and proximate result of an internal failure caused, including but not limited to, by a defect in the lithium-ion battery pack in said hoverboard.

21.     The Noza Tec Hoverboard was not compliant with UL2272 "Standard for Electrical Systems for Personal E-Mobility Devices.

22.     As a direct and proximate result of the fire which originated in the Noza Tec Hoverboard, the Santaniello family suffered significant property loss and damage to the Property, comprised of their home as well as their personal possessions, including but not limited to due to smoke and water damage.

**Amazon's Knowledge of the Dangers and Risks of Fire and Explosions from the Defective Hoverboards Sold on its Marketplace Website**

23.     Amazon put the defective Noza Tec Hoverboard sold to Mrs. Santaniello on its marketplace website through a third-party seller, "Poria Cocos", and into the stream of commerce in Massachusetts.

24.     Plaintiff's claim involves one of those third-party transactions.

25.     From September to November of 2015, Amazon received over $200,000,000.00 in sales for hoverboards.

26.     With respect to the hoverboards sold from November-December of 2015, Amazon did not have *any* safety certifications from *any* of the third-party sellers placing hoverboards for sale on its marketplace website.

27.     Beginning in November of 2015, Amazon began investigating the dangers of hoverboards and prepared a written report dated December 10, 2015. *See* Exhibit "1", Attachment "A", exhibits "2-4" which are attached hereto and incorporated by reference herein. This report included seventeen (17) complaints of hoverboard fires or explosions; four of which occurred during the time a hoverboard was being charged. *Id.* At that time, the leader of Amazon's product safety team feared that all hoverboards presented fire and explosion risks because the reports included so many manufacturers, brands and component parts. *Id.*

28.   At that time the hoverboards, and the lithium batteries included in them, were predominantly made by unknown manufacturers in China with little to no quality control, and as such, many were counterfeit products, were unsafe and presented a significant risk of fire, personal injury, death and property damage.

29.   Amazon held a meeting the same day it prepared a written report on December 10, 2015 with senior decisionmakers in product safety, quality and legal issues. *Id.*  By that point in time nearly 250,000 hoverboards had been sold.

30.   In the December 10th meeting Amazon recommended that international sales teams suspend hoverboard sales and that a "non-alarmist" e mail be sent to US hoverboard purchasers. *Id.*

31.   On December 11, 2015, Amazon stopped selling ***all*** hoverboards because of its safety risks and in particular, because of the danger of fire and explosions. *Id.*

32.   On December 12, 2015 Amazon sent an e mail to its customers which stated only that there had "been reports of safety issues involving products like the one you purchased that contain rechargeable lithium-ion batteries". *Id.* Nothing was said about the risk of fire or explosions, including while the hoverboard was in use. *Id.*

33.   Amazon did not communicate further with purchasers of hoverboards from its marketplace website, including but not limited to via another e mail, about the fire and explosion risks of the hoverboards.

34.   Based upon its investigation, Amazon knew that the lithium batteries in the hoverboards were the cause of the hoverboard fires and explosions.

35.   After the fact, in December 2015 the Amazon product safety team demanded that hoverboards comply with UL requirements, but very few sellers responded.

36.   Amazon also imposed a 90 day hold on payments to third-party sellers of hoverboards because it was concerned "it would see a higher return rate and [there would be] a potential [for sellers] to run off with this money."

37.   On information and belief, Amazon then retained the monies paid by its marketplace customers for the sales of the hoverboards by third-party sellers in the event consumers made claims for damages caused by the defective hoverboards.

38.   On information and belief, Amazon did not pay third-party sellers of hoverboards monies paid by purchasers of the hoverboards on its marketplace website.

39.   Amazon had the ability to communicate with the purchasers of the hoverboards sold by third-party sellers and warn them of the fire and explosion dangers of the hoverboards.

40.     Amazon did not communicate further with the purchasers of the hoverboards sold by third-party sellers on its marketplace website to warn of the fire and explosion dangers of the hoverboards.

## Amazon.com Inc. Online Marketplace Model

41.     Defendant Amazon.com, Inc. operates the online retail website Amazon.com.

42.     Amazon sells its own products on Amazon.com, but it also allows more than a million third-party sellers to use Amazon.com.

43.     Amazon lists the products sold by third-party sellers on its marketplace website, collects order information from consumers, and processes payments.

44.     In exchange for these services, Amazon collects fees from each third-party seller.

45.     The third-party seller choses a product that it wants to offer on Amazon's website, provides Amazon with a description of the product, including its brand, model, dimensions, and weight.

46.     Amazon requires all third-party sellers who wish to sell products on its website Amazon.com to execute a Business Solutions Agreement (hereinafter "BSA").

47.     The "BSA" controls all steps of the sales process of all products sold by third-party sellers on the Amazon.com website.

48.     Pursuant to the "BSA", the third-party seller must also provide Amazon with digital images of the product, as well as other information such as shipping and handling options, product availability, in-stock status, and any other information requested by Amazon.

49.     Under the "BSA", Amazon retains the right, in its sole discretion to determine the content, appearance, design, functionality, and all other aspects of services it provides to third-party sellers, including by redesigning, modifying, removing, or restricting access to any of them.

50.     Customers make purchases on Amazon's website and Amazon collects payment and delivers order information to the third-party seller.

51.     Amazon provides payment processing for its third-party sellers.

52.     Pursuant to the "BSA", Amazon is the third-party seller's agent, for among other things, processing payments, refunds, and adjustments, receiving and holding Sales Proceeds on [its] behalf, remitting Sales Proceeds, charging its Credit Card, and paying Amazon and its Affiliates amounts the third-party seller owes.

53.     Amazon can at any time cease providing any or all of the services to third-party sellers in

its sole discretion and without notice, including suspending, prohibiting, or removing any listing.

54.   Amazon can require third-party sellers to stop or cancel orders of any product.

55.   If Amazon determines that a vendor's actions or performance may result in risks to Amazon or third parties, it may in its sole discretion withhold any payments to the third-party seller.

56.   Amazon also required third-party sellers to release it, as well as to indemnify, defend and hold it harmless for any claim, loss, injury or property damage settlement, cost and/or expense caused by products the third-party seller sold on its marketplace website.

57.   For products sold by third-party sellers on its marketplace website, the usual practice was for Amazon to retain a percentage of the purchase price as a service fee and send the remainder of the purchase price to the third-party seller.

58.   Amazon also provides an "A to Z" guarantee for items sold by third parties which includes both timely delivery of products sold by third-party sellers and that the product will arrive in the condition described on Amazon.com. If a product is damaged, defective, or materially different than listed, the buyer can ask the third-party seller for a refund. If the third-party seller does not respond, the buyer can return the product directly to Amazon. Amazon will process the return and refund the purchase price and cost of shipping.

59.   Amazon is an integral part of the chain of distribution of the products sold on its marketplace website.

60.   Amazon controlled allocation of the risks of defective products sold to purchasers on its marketplace website.

61.   Amazon provided the only conduit between third-party sellers and the purchasers of their products on its marketplace website.

62.   Amazon set substantial fees that it would retain for itself, so it was positioned to insure against the risk of defective products.

63.   As part of the agreement with third-party sellers, Amazon required the third-party sellers to register each product, and reserved the right to refuse to sell any of them.

64.   Amazon was in a position to halt the flow of any defective goods of which it became aware.

65.   Amazon protected itself by requiring third-party sellers to indemnify Amazon.

66.   Amazon implicitly represented that products sold on its marketplace website, including

but not limited to the Noza Tec Hoverboard, were safe by listing it for sale among its own products, and it expressly guaranteed timely delivery in good condition.

67. In its business model for its marketplace website, Amazon assumed the role of a traditional reseller and/or distributor.

68. Amazon was a critical component of the chain of distribution of products sold on its marketplace website, including products sold by third-party sellers and, as such, is essential to the sales transaction.

69. Without Amazon, the sale of products by third-party sellers could not take place.

70. Amazon is responsible for putting the products sold on its marketplace website by third-party sellers into the stream of commerce in Massachusetts.

71. Through the "BSA", which Amazon required that all third-party sellers of products on its website execute, Amazon had complete control over all monies from the "co-sales", including the right to impose a 90 day hold on the payment of funds to the seller.

72. Approximately forty percent (40%) of Amazon's gross revenue comes from co-sales, such as the transactions in which Mrs. Santaniello purchased the hoverboards.

73. Amazon has a "merchant integration team" which acts as a dedicated account manager for third-party sellers to help list and describe products, as well as how to fulfill orders.

74. Amazon does not permit any direct communication between a third-party seller and Amazon customers.

75. Amazon had a product safety team which monitored sales for product safety problems.

76. Amazon had a "Dangerous Goods" team to ensure proper identification of dangerous products which included hoverboards with a lithium-ion battery.

77. Amazon had no vetting process in place to ensure that third-party sellers were amenable to legal process.

78. Amazon exerts substantial control over third-party sellers as in the "BSA" Amazon had the right in [its] sole discretion to ... suspend[ ], prohibit[ ], or remov[e] any [product] listing," "withhold any payments" to third-party vendors, "impose transaction limits," and "terminate or suspend ... any Service [to a third-party-vendor] for any reason at any time."

79. Amazon is fully capable, in its sole discretion, of removing unsafe products from its website.

83. Amazon is uniquely positioned to receive reports of defective products, which in turn can lead to such products being removed from circulation. Amazon's website, which Amazon in its sole discretion has the right to manage, serves as the public-facing forum for products listed by third-party vendors.

84. Amazon can distribute the cost of compensating for injuries resulting from defects.

85. Amazon can adjust the commission-based fees that it charges to third-party sellers based on the risk that the third-party seller presents.

86. Purchasers of products on its marketplace website may not be able to recover damages from unidentifiable third-party sellers where neither the purchaser, nor Amazon has been able to locate unknown third-party sellers.

**Plaintiff's Investigative Efforts to Locate Unknown Third-party Seller, "Poria Cocos"**

87. In response to Plaintiff's request, Amazon advised that "Poria Cocos" was the third-party seller of the Noza Tec Hoverboard to Mrs. Santaniello.

88. Amazon identified the third-party seller of the Noza Tec hoverboard to Mrs. Santaniello as Alma Buchanaan [sic], 2700 Las Positas Rd, Livermore, CA 94551, Tel. (925)724-7869.

89. An investigator assigned to locate Alma Buchanaan [sic], was unable to find any person by this name in California at the time of the sale or thereafter.

90. The third-party seller listed the Livermore address on Amazon's marketplace website in connection with the sale of the Noza Tec Hoverboard purchased by Mrs. Santaniello.

91. The investigator could not locate the unknown third-party seller listed on Amazon's website.

92. Plaintiff also is unable to identify the manufacturer of the Noza Tec Hoverboard, and without such information cannot name said entity as a party defendant in this lawsuit.

93. The manufacturer of the defective Noza Tec Hoverboard is unavailable and/or judgment proof.

94. The third-party seller, "Poria Cocos" of the defective Noza Tec Hoverboard is unavailable and/or judgment proof.

95. Neither the manufacturer, nor the third-party seller of the defective Noza Tec hoverboard is subject to service of process within Massachusetts.

**Plaintiff's Notice of Claim to Amazon.com, Inc. and Demand for Settlement Pursuant to M.G.L. c. 93A**

96.     Immediately after discovering that Amazon sold and/or distributed the Noza Tec
        Hoverboard to Susan Santaniello, Amazon was placed on notice of this loss by letter
        dated September 15, 2017 sent via regular mail and by fax.

97.     On or about January 16, 2018, Amazon and Arbella, both parties to this matter, jointly
        conducted an examination of the failed Noza Tec Hoverboard in this matter.

98.     As a result of the joint examination, experts determined that the failure of the lithium-ion
        battery pack in the Noza Tec Hoverboard caused the fire in the Santaniello home on
        September 15, 2017.

99.     Despite clear evidence to the contrary, on May 10, 2018, Amazon, by and through its
        attorneys, denied liability.

100.    Arbella presented its demand, pursuant to M.G.L. c. 93A, in correspondence dated June
        14, 2019, sent via certified mail # 7017 3040 0001 1096 2814, with a return receipt
        signed for on June 17, 2019, for payment from Amazon for the damages sustained by
        Arbella as a result of the fire. *See* Exhibit "1", Attachment "A", which is attached hereto
        and incorporated by reference herein.  Arbella specifically set forth the facts upon which
        its experts determined that the Noza Tec Hoverboard caused the fire in the Santaniello
        home. *Id.* In addition, Arbella set forth the theories of liability upon which it is entitled to
        recover which include but are not limited to negligence, breach of express and implied
        warranties and violation of M.G.L. c. 93A. *Id.*

101.    Defendant, Amazon, failed to respond within the thirty-day period prescribed by M.G.L.
        c. 93A.

102.    On or about August 23, 2019 Arbella then sent a second demand letter pursuant to
        M.G.L. c. 93A to Amazon by certified mail #70180360000054925073. *See* Exhibit "1".

103.    Defendant, Amazon's, response to the demand letter is attached hereto and incorporated
        by reference herein as Exhibit "2".

104.    Defendant, Amazon, continues to deny liability in this matter.

105.    Defendant, Amazon, has failed to make any offer of settlement.

## COUNT I (NEGLIGENCE- Arbella v. Amazon)

106.    The Plaintiff repeats and realleges Paragraphs 1 through 105 as though fully set forth
        herein.

107.    At all times relevant, Defendant, Amazon.com, Inc., through its employees, agents,
        servants and/or representatives, owed a duty to use reasonable care in the assembly,
        installation, testing, inspection, sale and/or distribution of the Noza Tec Hoverboard.

108.   Notwithstanding the aforesaid duties, and in breach thereof, Defendant, Amazon.com, Inc., through its employees, agents, servants and/or representatives, committed one or more of the following acts and/or omissions, including but not limited to:

   a.   failing to properly assemble the Noza Tec Hoverboard;
   b.   failing to properly install the Noza Tec Hoverboard;
   c.   failing to properly test the Noza Tec Hoverboard;
   d.   failing to discover defects in the Noza Tec Hoverboard;
   e.   failing to properly inspect the Noza Tec Hoverboard;
   f.   failing to ensure appropriate components were incorporated in the Noza Tec Hoverboard;
   g.   failing to properly develop quality control and/or quality assurance programs with respect to sales of the Noza Tec Hoverboard;
   h.   failing to remove the Noza Tec Hoverboard from its marketplace website when it knew or should have known of the defects in the hoverboard constituted an unreasonably dangerous condition;
   i.   otherwise failed to use due care and/or perform its work in a workmanlike manner;
   j.   failing to properly monitor for unsafe products sold on its marketplace website;
   k.   failing to properly communicate with purchasers of unsafe products on its marketplace website;
   l.   failing to provide services to purchasers of unsafe products on its marketplace website; and
   m.   failing to provide for the safe removal and return of the Noza Tec Hoverboard.

109.   As a direct and proximate result of one or more of Defendant, Amazon.com, Inc., negligent acts and/or omissions, the Noza Tec Hoverboard caught fire causing significant injury and damage to the Santaniello family who purchased the Noza Tec Hoverboard from an unknown third-party seller on its marketplace website.

   WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Amazon.com, Inc., in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

## COUNT II (NEGLIGENCE- Arbella v. Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos")

110.   The Plaintiff repeats and realleges Paragraphs 1 through 109 as though fully set forth herein.

111.    At all times relevant, Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos",
through its employees, agents, servants and/or representatives, owed a duty to use
reasonable care in the assembly, installation, testing, inspection, sale and/or distribution
of the Noza Tec Hoverboard.

112.    Notwithstanding the aforesaid duties, and in breach thereof, Defendant, Alma Buchanaan
[sic], a/ka and/or d/b/a "Poria Cocos", through its employees, agents, servants and/or
representatives, committed one or more of the following acts and/or omissions, including
but not limited to:

   a.    failing to properly assemble the Noza Tec Hoverboard;
   b.    failing to properly install the Noza Tec Hoverboard;
   c.    failing to properly test the Noza Tec Hoverboard;
   d.    failing to discover defects in the Noza Tec Hoverboard;
   e.    failing to properly inspect the Noza Tec Hoverboard;
   f.    failing to ensure appropriate components were incorporated in the Noza Tec
         Hoverboard;
   g.    failing to properly develop quality control and/or quality assurance programs with
         respect to sales of the Noza Tec Hoverboard;
   h.    failing to remove the Noza Tec Hoverboard from Amazon's marketplace website
         when it knew or should have known of the defects in the hoverboard constituted
         an unreasonably dangerous condition;
   i.    otherwise failed to use due care and/or perform its work in a workmanlike
         manner;
   j.    failing to properly monitor for unsafe products sold on Amazon's marketplace
         website;
   k.    failing to properly communicate with purchasers of unsafe products on Amazon's
         marketplace website;
   l.    failing to provide services to purchasers of unsafe products on Amazon's
         marketplace website; and
   m.    failing to provide for the safe removal and return of the Noza Tec Hoverboard.

113.    As a direct and proximate result of one or more of Defendant, Alma Buchanaan [sic],
a/ka and/or d/b/a "Poria Cocos", negligent acts and/or omissions, the Noza Tec
Hoverboard caught fire causing significant injury and damage to the Santaniello family
who purchased the Noza Tec Hoverboard from an unknown third-party seller on
Amazon's marketplace website.

        WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", in an amount which is fair and just to

compensate Arbella for damages to be determined to be appropriate, together with interest and

costs, and any other relief to which it may be entitled.

## COUNT III (FAILURE TO WARN - Arbella v. v. Amazon)

114.   The Plaintiff repeats and re-alleges Paragraphs 1 through 113 as if fully set forth herein.

115.   The Defendant, Amazon.com, Inc., had a duty to ensure that the Noza Tec Hoverboard
was manufactured, assembled, installed, tested, and inspected with due care and in a good
and workman like manner such that when it was sold and/or distributed from its
marketplace website it did not present an unsafe and dangerous risk of harm to
purchasers.

116.   The Defendant, Amazon.com, Inc., knew or reasonably should have known of the unsafe
and dangerous condition(s) of the Noza Tec Hoverboard that created an unreasonable risk
of harm, including a risk of fire to the Santaniello family.

117.   The Defendant, Amazon.com, Inc., did breach that duty of care when it, by and through
its employees, agents, servants and/or representatives, negligently failed to warn
Santaniello of the unsafe and dangerous conditions of the Noza Tec Hoverboard which
created an unreasonable risk of fire.

118.   Following the sale of the Noza Tec Hoverboard to Mrs. Santaniello, the Defendant,
Amazon.com Inc., had a continuing duty to warn of the hazards and dangers of the
hoverboards, including but not limited to the Noza Tec Hoverboards, when it conducted
its own investigation and learned said that products sold on its marketplace website had
caused numerous fires.

119.   The Defendant, Amazon.com Inc., knew or should have known that the hoverboards and
the lithium battery packs in these products, including but not limited to the Noza Tec
Hoverboard, sold on and distributed through its marketplace website, were defective and
unreasonably dangerous, presented a substantial and unjustifiable risk of fire and were
poorly manufactured without quality control.

120.   The Defendant, Amazon.com Inc. breached its continuing duty to warn when, among
other things, it failed to communicate further about the express dangers of fire and
explosions, about which it knew or should have known, to purchasers of the hoverboards,
including the Noza Tec Hoverboard to Mrs. Santaniello, and failed to provide purchasers
with a reasonable  means or mode for the safe return of such dangerous products to
Amazon.

121.   As a direct and proximate result of its breach of its duty of care, the Santaniello family
was caused to suffer damages, including but not limited to their home and loss of their
personal possessions.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Amazon.com, Inc., in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

## COUNT IV (FAILURE TO WARN - Arbella v. Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos")

122.   The Plaintiff repeats and re-alleges Paragraphs 1 through 121 as if fully set forth herein.

123.   The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", had a duty to ensure that the Noza Tec Hoverboard was manufactured, assembled, installed, tested, and inspected with due care and in a good and workman like manner such that when it was sold and/or distributed from its marketplace website it did not present an unsafe and dangerous risk of harm to purchasers.

124.   The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", knew or reasonably should have known of the unsafe and dangerous condition(s) of the Noza Tec Hoverboard that created an unreasonable risk of harm, including a risk of fire to the Santaniello family.

125.   The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", did breach that duty of care when it, by and through its employees, agents, servants and/or representatives, negligently failed to warn Santaniello of the unsafe and dangerous conditions of the Noza Tec Hoverboard which created an unreasonable risk of fire.

126.   Following the sale of the Noza Tec Hoverboard to Mrs. Santaniello, the Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", had a continuing duty to warn of the hazards and dangers of the hoverboards, including but not limited to the Noza Tec Hoverboards, when Amazon had conducted its own investigation and learned said that products sold on the Amazon marketplace website had caused numerous fires.

127.   The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", knew or should have known that the hoverboards and the lithium battery packs in these products, including but not limited to the Noza Tec Hoverboard, sold on and distributed through the Amazon marketplace website, were defective and unreasonably dangerous, presented a substantial and unjustifiable risk of fire and were poorly manufactured without quality control.

128.   The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", breached its continuing duty to warn when, among other things, it failed to communicate further about

the express dangers of fire and explosions, about which it knew or should have known, to purchasers of the hoverboards, including the Noza Tec Hoverboard to Mrs. Santaniello, and failed to provide purchasers with a reasonable means or mode for the safe return of such dangerous products to Amazon.

129.   As a direct and proximate result of its breach of its duty of care, the Santaniello family was caused to suffer damages, including but not limited to their home and loss of their personal possessions.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", in an amount which is fair and just to

compensate Arbella for damages to be determined to be appropriate, together with interest and

costs, and any other relief to which it may be entitled.

## COUNT V (INTENTIONAL AND/OR NEGLIGENT MISREPESENTATION - Arbella v. Amazon)

130.   The Plaintiff repeats and realleges Paragraphs 1 through 129 as though fully set forth herein.

131.   At all times relevant, Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, knew or should have known of the defective and/or unreasonably dangerous condition of the said Noza Tec Hoverboard and the risks of injury and damage from fire and explosion to purchasers of these products on its marketplace website.

132.   The subject Noza Tec Hoverboard was defective and in an unreasonable dangerous condition at the time it left the Defendant's possession and control, and among other things, it was falsely represented on the Amazon marketplace website, not as represented and failed to comply with applicable safety standards, including but not limited to UL2272 "Standard for Electrical Systems for Personal E-Mobility Devices.

133.   The defective and unreasonably dangerous condition and subsequent malfunctioning of the Noza Tec Hoverboard was the direct and proximate cause of the fire causing substantial injury and damage to the Santaniello family who purchased the Noza Tec Hoverboard from an unknown third-party seller, "Poria Cocos" on its marketplace website.

134.   Mrs. Santaniello had justifiably relied on the representations made and information provided by the Defendant, Amazon.com, Inc., in her purchase of the Noza Tec Hoverboard.

135.   The Defendant, Amazon.com, Inc., failed to exercise reasonable care or competence in communicating information it knew or should have known relative to the risks and dangers to the purchasers, including but not limited to Mrs. Santaniello, of hoverboards, including but not limited to the Noza Tec Hoverboard on its marketplace website.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Amazon.com, Inc., in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

## COUNT VI (INTENTIONAL AND/OR NEGLIGENT MISREPESENTATION - Arbella v. Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos")

136.   The Plaintiff repeats and realleges Paragraphs 1 through 135 as though fully set forth herein.

137.   At all times relevant, Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, knew or should have known of the defective and/ or unreasonably dangerous condition of the said Noza Tec  Hoverboard and the risks of injury and damage from fire and explosion to purchasers of these products on Amazon's marketplace website.

138.   The subject Noza Tec Hoverboard was defective and in an unreasonable dangerous condition at the time it left the Defendant's possession and control, and among other things, it was falsely represented on the Amazon marketplace website, not as represented and failed to comply with applicable safety standards, including but not limited to UL2272 "Standard for Electrical  Systems for Personal E-Mobility Devices.

139.   The defective and unreasonably dangerous condition and subsequent malfunctioning of the Noza Tec Hoverboard was the direct and proximate cause of the fire causing substantial injury and damage to the Santaniello family who purchased the Noza Tec Hoverboard from an unknown third-party seller, "Poria Cocos" on its marketplace website.

140.   Mrs. Santaniello had justifiably relied on the representations made and information provided by the Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", in her purchase of the Noza Tec Hoverboard.

141.    The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", failed to exercise reasonable care or competence in communicating information it knew or should have known relative to the risks and dangers to the purchasers, including but not limited to Mrs. Santaniello, of hoverboards, including but not limited to the Noza Tec Hoverboard on its marketplace website.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", in an amount which is fair and just to

compensate Arbella for damages to be determined to be appropriate, together with interest and

costs, and any other relief to which it may be entitled.

## COUNT VII (BREACH OF IMPLIED WARRANTY- Arbella v. Amazon)

142.    The Plaintiff repeats and realleges Paragraphs 1 through 141 as though fully set forth herein.

143.    In assembling, installing, testing, inspecting, selling and/or distributing the Noza Tec Hoverboard, Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, impliedly warranted that the Noza Tec Hoverboard would be of merchantable quality, safe, and in proper condition for the ordinary use for which it was designed, manufactured, distributed and used, and, in reliance thereof, the Noza Tec Hoverboard was purchased, installed and operated in a normal fashion in the Santaniello's property.

144.    Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, breached the implied warranty because the Noza Tec Hoverboard was not of merchantable quality, safe, fit or useable for the purpose for which it was designed and/or manufactured and distributed as heretofore set forth in this Complaint, which are incorporated by reference herein as though fully set forth.

145.    The breach of the implied warranty of merchantability by Defendant, Amazon.com, Inc., was the direct and proximate cause of the fire which caused significant injury and damage to the Santaniellos who had purchased the Noza Tec Hoverboard on its marketplace website.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Amazon.com, Inc., in an amount which is fair and just to compensate Arbella for damages to be

determined to be appropriate, together with interest and costs, and any other relief to which it

may be entitled.

## COUNT VIII (BREACH OF IMPLIED WARRANTY- Arbella v. Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos")

146.    The Plaintiff repeats and realleges Paragraphs 1 through 145 as though fully set forth herein.

147.    In assembling, installing, testing, inspecting, selling and/or distributing the Noza Tec Hoverboard, Defendant, Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, impliedly warranted that the Noza Tec Hoverboard would be of merchantable quality, safe, and in proper condition for the ordinary use for which it was designed, manufactured, distributed and used, and, in reliance thereof, the Noza Tec Hoverboard was purchased, installed and operated in a normal fashion in the Santaniello's property.

148.    Defendant, Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, breached the implied warranty because the Noza Tec Hoverboard was not of merchantable quality, safe, fit or useable for the purpose for which it was designed and/or manufactured and distributed as heretofore set forth in this Complaint, which are incorporated by reference herein as though fully set forth.

149.    The breach of the implied warranty of merchantability by Defendant, Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos", was the direct and proximate cause of the fire which caused significant injury and damage to the Santaniellos who had purchased the Noza Tec Hoverboard on Amazon's marketplace website.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos", in an amount which is fair and just to

compensate Arbella for damages to be determined to be appropriate, together with interest and

costs, and any other relief to which it may be entitled.

## COUNT IX (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE- Arbella v.  Amazon)

150.    The Plaintiff repeats and realleges Paragraphs 1 through 149 as though fully set forth herein.

151.    The Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, distributed, sold and placed in the stream of commerce the Noza Tec Hoverboard, with a reasonable expectation that it would be used by consumers such as the Santaniellos for its intended purpose. The Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, distributed, sold and placed in the stream of commerce the Noza Tec Hoverboard in a defective condition such that the product failed causing significant damage to Santaniello's property and the contents thereof.

152.    In careless disregard of its duties, the Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, did distribute, sell to Mrs. Santaniello, and place in the stream of commerce a defectively designed and manufactured Noza Tec Hoverboard, causing the Plaintiff's damages as set forth herein.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Amazon.com, Inc., in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

## COUNT X (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE - Arbella v. Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos")

153.    The Plaintiff repeats and realleges Paragraphs 1 through 152 as though fully set forth herein.

154.    The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants or representatives, distributed, sold and placed in the stream of commerce the Noza Tec Hoverboard, with a reasonable expectation that it would be used by consumers such as the Santaniellos for its intended purpose. The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, distributed, sold and placed in the stream of commerce the Noza Tec Hoverboard in a defective condition such that the product failed causing significant damage to Santaniello's property and the contents thereof.

155.    In careless disregard of its duties, the Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, did distribute, sell to Mrs. Santaniello, and place in the stream of commerce a defectively

designed and manufactured Noza Tec Hoverboard, causing the Plaintiff's damages as set forth herein.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Alma Buchanaan [sic], a/k/a and/or d/b/a "Poria Cocos", in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

### COUNT XI (BREACH OF EXPRESS WARRANTY- Arbella v.  Amazon)

156.    The Plaintiff repeats and realleges Paragraphs 1 through 155 as though fully set forth herein.

157.    The Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, through labeling, advertising and visual representations directed to the attention of the public generally, expressly warranted that the Noza Tec Hoverboard could be used by consumers such as the Santaniello family, for its intended or particular purpose and was safe and free from defects.

158.    In reliance upon such warranty made by the Defendant, Mrs. Santaniello did in fact purchase the Noza Tec Hoverboard, by and through Defendant's employees, agents, servants and/or representatives.

159.    At the time the Noza Tec Hoverboard was originally purchased, it was defective and not safe or reasonably suitable for the purposes as advertised.

160.    As a result, the Defendant's express warranties were not true and such breaches of warranty proximately caused the Plaintiff's damages as set forth herein.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant, Amazon.com, Inc, in an amount which is fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs, and any other relief to which it may be entitled.

## COUNT XII (BREACH OF EXPRESS WARRANTY- Arbella v. Arbella v. Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos")

161.    The Plaintiff repeats and realleges Paragraphs 1 through 160 as though fully set forth herein.

162.    The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, through labeling, advertising and visual representations directed to the attention of the public generally, expressly warranted that the Noza Tec Hoverboard could be used by consumers such as the Santaniello family, for its intended or particular purpose and was safe and free from defects.

163.    In reliance upon such warranty made by the Defendant, Mrs. Santaniello did in fact purchase the Noza Tec Hoverboard, by and through Defendant's employees, agents, servants and/or representatives.

164.    At the time the Noza Tec Hoverboard was originally purchased, it was defective and not safe or reasonably suitable for the purposes as advertised.

165.    As a result, the Defendant's express warranties were not true and such breaches of warranty proximately caused the Plaintiff's damages as set forth herein.


        WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", in an amount which is fair and just to

compensate Arbella for damages to be determined to be appropriate, together with interest and

costs, and any other relief to which it may be entitled.


## COUNT XIII (VIOLATION OF M.G.L. C. 93A- Arbella v.  Amazon)

166.    The Plaintiff repeats and realleges Paragraphs 1 through 165 as though fully set forth herein.

167.    The Defendant, Amazon.com, Inc., by and through its employees, agents, servants and/or representatives, has engaged in unfair and deceptive acts and practices as alleged herein.

168.    As a result of such acts, the Plaintiff has suffered and continues to suffer harm and damages.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Amazon.com, Inc:

     a. in an amount determined to be fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs;

     b. multiple damages under M.G.L. c. 93A, and their attorneys fees and costs in pursuing this action; and

     c. such other forms of relief and damages as this Court deems just and proper.

**COUNT XIV (VIOLATION OF M.G.L. C. 93A- Arbella v. Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos")**

169. The Plaintiff repeats and realleges Paragraphs 1 through 168 as though fully set forth herein.

170. The Defendant, Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos", by and through its employees, agents, servants and/or representatives, has engaged in unfair and deceptive acts and practices as alleged herein.

171. As a result of such acts, the Plaintiff has suffered and continues to suffer harm and damages.

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert

Santaniello and Susan Santaniello, demands judgment in its favor and against the Defendant,

Alma Buchanaan [sic], a/ka and/or d/b/a "Poria Cocos":

     d. in an amount determined to be fair and just to compensate Arbella for damages to be determined to be appropriate, together with interest and costs;

     e. multiple damages under M.G.L. c. 93A, and their attorneys fees and costs in pursuing this action; and

     f. such other forms of relief and damages as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, respectfully requests the following relief:

1. Plaintiff be awarded such damages and interest as may be permitted by law;

2. Plaintiff be awarded such attorney fees and costs of suit interest as may be permitted by law; and

3. This Court order any other relief it deems reasonable and proper.

**WHEREFORE,** Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, hereby demands judgment in its favor.

### JURY TRIAL DEMAND

Plaintiff, Arbella Mutual Insurance Company, as subrogee for Robert Santaniello and Susan Santaniello, demands trial by jury as to each and every count of Plaintiff's Complaint to the extent permitted by law.

Respectfully submitted,
Counsel for the Plaintiff, Arbella
Mutual Insurance Co. a/s/o
Robert Santaniello and Susan Santaniello,

/s/Patricia Noyes-Corrigan
Patricia Noyes-Corrigan, Esq.
B.B.O. # 374930
pnc@grglaw.com
Gargiulo/Rudnick, LLP
766 Falmouth Road, Unit A-6
Mashpee, MA 02649
(617) 742-3833
(508) 477-0455 (fax)

Dated: September 10, 2020